and we call the next case please. 312-0757, this is David Illinois, appellate by Mark Hoss, will be Deontay Moore, appellant by Thomas Corrales. Mr. Corrales, before you start the meter on Mr. Corrales, go ahead and come up. I know some of you all were here yesterday, some weren't, I'm not sure, but this empty seat over here is being occupied by the virtual Judge Holdridge, who was just unable to be here. He'll be listening to the tapes and participating in a case conference on this and the resolution of the case. So you have three judges, just one less to pester you both here today. Sounds good, thank you. Good morning, your honors. May it please the court, counsel, I'm Tom Corrales from the Office of the State Appellate Defender. I'm here representing Deontay Moore. Deontay is now an 18-year-old inmate in the Department of Corrections who brings this appeal after a second transfer of his juvenile case to criminal court, which resulted in his being found guilty at a bench trial of an armed robbery with a firearm. And for that offense, he received a minimum adult sentence of 21 years imprisonment. Deontay was 13 years old on the day he committed the robbery in April of 2009, and since he was immediately arrested on that day, he's now been in custody a little more than five years. In 2009, the state succeeded in having the juvenile petition dismissed in favor of a criminal prosecution, which was only possible by filing a motion for a discretionary transfer from the juvenile court to the criminal court. And in the previous appeal, the dispositive issue was whether or not the juvenile judge conducted an adequate juvenile transfer proceeding before the case was prosecuted. There was also an issue related to whether it was a deadly weapon. That was a part of the factors at the initial discretionary transfer hearing. There were several that were... And the charge was amended or refiled, and so that issue is no longer... Now, on this appeal, the criminal charge has been cleaned up for that. Now, on this appeal, NVAC informed this court after what I guess I would call a re-run of the proceedings in Peoria County. What did we tell the trial judge to do on remand? There was a rehearing petition filed after the initial decision, and then the decision informed the lower court that the conviction was vacated and that the case was restarted, essentially, in the juvenile court. At that point, an amended delinquency petition was filed, and everything was on the table. The case could have stayed in juvenile court, but the state did file a new transfer motion. I think Justice Slitton was pretty specific in what he wanted the trial court to do. Yeah, well, it was the relief that the state wondered whether or not there could be some sort of a retrospective transfer proceeding to save, I think, court time in terms of would the conviction stand if the transfer hearing... In other words, after the second transfer hearing was conducted, as it was in this case, was there any need to re-prosecute the criminal case? That was the gist of the rehearing petition. But, yeah, the final paragraph is judgment of the circuit court is reversed, and the order transferring is vacated. The cause is remanded to the juvenile court. So it went back to stage one, where the state simply had a petition for adjudication of delinquency against Deontay. They did file a new motion for discretionary transfer, and that hearing was conducted in front of Judge Fredrickson, the same juvenile judge who granted the state's request to transfer the cause in 2009. After Judge Fredrickson allowed the state's second transfer motion, Deontay was again indicted, found guilty after a bench trial, and then he received a mandatory minimum adult sentence of 21 years imprisonment. Now, even though we have two issues in this appeal, and they involve different forms of relief, they do overlap in a significant respect. And that is because of the imposition of a mandatory minimum sentence after the trial in the criminal court is what I would call the elephant in the room. And that was there at the transfer hearing, and it was clearly there when the next judge had to sentence Deontay after he was convicted. With that in mind, I'm going to kind of blend the two arguments together rather than outline them and take them one at a time, because I think what we're faced with here is I'm attempting to convince Your Honors that either A, Judge Fredrickson abused his discretion again when he subjected Deontay to an adult prosecution, even after he was made aware of the factors that he misapplied the first time, or B, the sentencing scheme that forced and tied the hands of the criminal court judge to impose a 21-year sentence cannot survive the constitutional analysis. Let's talk about that in a minute. And ultimately, so then the argument becomes, I'm assuming that because of this mandatory minimum in a criminal court, it's an abuse of discretion to send a 13-year-old minor to a criminal court where that's got to happen. Correct. Really it's unconstitutional, isn't that your argument? Not an abuse of discretion. The transfer. Well, it would be an unconstitutional argument, Justice Wright, if we had challenged the discretionary transfer statute. A lot of cases are out there now in which the automatic transfer statute has been challenged as unconstitutional because it does not permit the discretion. We simply are applying the abuse of discretion standard with respect to Issue 1. The, I mean, I guess not every case, but in most times when they're moving to transfer a juvenile to adult court, it's because of a serious crime, a serious felony as opposed to a less serious felony. For a 13 or 14-year-old, yeah. And most of these serious felonies are not probationable, right? That's true, by and large. And so if, I'm just trying to think, if what you're saying is right, every serious felony has a mandatory minimum, whether it's 6 to 30, and nonprobational ergo, so to that extent, every serious felony has a mandatory minimum. And if your argument is true, I'm wondering, wouldn't that make any transfer of a juvenile to adult court, to criminal court, unconstitutional? Because if the offense is not probationable, and because there's, whether the mandatory minimum is 6 years or whatever it might be, there's a mandatory minimum, in essence, on almost every serious felony. Well, the way I would conceptualize that is, because a 13 and a 14-year-old is not subject to the automatic transfer, the discretionary transfer statute should give the juvenile court judge enough time to reflect on whether this is a standard 6 to 30 year class X, which, by the way, at the first transfer hearing, the judge was under that. And so he did have a misconception as to how serious the minor would have to be sentenced. But I think that makes for a less strong argument that a 6-year minimum, where the minor is 13 years old, he could stay in the Department of Corrections for 7. But even the standard class X has a mandatory minimum of 6 years. Right. And so where does one draw the line at where this mandatory minimum becomes unconstitutional for a minor? Well, I recently submitted new authority. I know it comes from the state next door, but the Iowa Supreme Court has drawn the line at all minimums. State versus Iowa. And if, in fact, that's true, would you agree with me that you can't transfer a 13-year-old to criminal court on a class X felony? Because if you do, there's a mandatory minimum of 6 years. Well, the relief could be not that you can't transfer the minor, especially if we're in the context of a discretionary, which only applies for a 2-year range of a teenager up to 15. Then he's automatically transferred under the statute, the earlier parts of the statute that we have, in this case, Parts 1 or Parts 2. But a 13- or a 14-year-old, you wouldn't be saying the transfer is unconstitutional. The relief in the second issue in our case, in Miller versus Alabama, and in fact, the 2002 Illinois people versus Miller case, is that the sentence could be discretionary. Which is odd, because let's say a straight class X, 6 to 30, the relief is the judge can put him on probation even though the statute gets sentencing in the adult court. Even though the statute, so in other words, it's an unconstitutional sentencing statute. Yeah, because our Supreme Court has said that when a trial judge issues a sentence that is below the statutory minimum, it's without authority and it's void. Subject to constitutional limitations. And that would actually be something the Illinois Supreme Court would automatically have to take this appeal. If that was the way your honors went and you said, in this case, get back to the facts here, 15 years had to be added on. So we're not dealing with only 6-year minimum. I mean, I realize it matters if you're the guy doing the 15. That's what I was going to say. But at the same time, is it the concept of mandatory, I mean, it's an interesting issue you got here. And is it the issue of the mandatory minimum on a minor? Because if it is, every class X felony, even without an add-on, has a mandatory minimum. But I think what we have to get away from is trying to think in these broad strokes. Because then we fall right into the trap of one-size-fits-all sentencing. And that's exactly what Miller v. Alabama was trying to say. When you have minors that could be 13, 14, 15, think of, I mean, the court even said, the common sense realities that every parent knows. Think of what happens between 13 and 17. You cannot use these broad strokes or broad brushes to say, well, every 6-year sentence. It might not be unconstitutional for a 17-year-old who has a loaded gun. Well, I mean, that would be the 15-year add-on. But say he has a big hunting knife and commits an armed robbery, he's 17. That 6-year sentence might not be unconstitutional. Because it's only if the judge would not in his discretion have chosen something less than that mandatory minimum. In this case, if you look back at the motion to reconsider a sentence, the last transcript in the record, Judge Cordy said, my hands were tied here. Now, he doesn't go as far as to say, if I could, I wouldn't have given 6. But can we really base the law on the subjective intent of individual trial judges out there? Because, I mean, that seems like a bad way to run a railroad if we're trying to have a fair sentencing scheme. So what Judge Cory might or might not have done if his hands weren't tied, because some judge might have given your client 3 years and some judge might have given your client 30 years, it seems to me that the big issue is these mandatory sentences, right? And so it just seems to me we're going down, if we get off on a tangent on what any given trial judge might have done without the mandatory minimum, it doesn't get us anywhere. Well, I would just say that if a case gets to an extreme, and I think this is rather extreme for someone who's 13 to have to do 21 years for an offense that, you know, the letter he wrote to the court for the pre-sentence investigation indicates that he was kind of forced into duty by his benefactor who he lived with. And then don't you just come down to the good old old-fashioned unconstitutional because it's cruel and unusual punishment to give a 13-year-old? That's the argument here, is that it's either cruel and unusual or under our proportionate penalties section of the Illinois Constitution, a disproportionate. And Miller, of People v. Miller, there was a judge who was bold and said, this deserves 50 years. This was a double murder, but the minor was not the one who pulled the trigger. He was an accomplice. And that illness was affirmed by the Illinois Supreme Court. So I think in certain cases, you're not really kind of throwing up your hands and letting chaos reign in the circuit courts where minors are being sentenced. It's just putting discretion into the circuit court where it's an out-of-the-whack sentencing scheme. I really don't want to rush you too much, but I'd like to have you direct your focus on the first issue. And that is, I think Justice Litton gave the trial judge some pretty big hints. What you have to do before transferring a minor. And those things were, you consider his prior history and you consider the programs available. I'd like to start first with prior history. My question to you is, was Judge Fredrickson required to consider the minor's behavior while in custody after the first transfer hearing? There were no violations after the initial transfer hearing. He was compliant, even though he had been non-compliant before. I agree. No, he wasn't required to do that. But I'll tell you, I was shocked that neither... So the case law would not require him to do that? The post-incarceration conduct of the minor is the same rule that would apply in a resentencing scenario. It could be considered. The state can't say, you can't consider that, Judge. The judge can consider that. But on the same end, the defendant couldn't say, you have to consider this. But it wasn't even submitted in this case. By defense counsel. Right. My second question is, the trial judge did something rather unusual because Justice Litton gave him such a big hint. You have to consider the programs available to him in the juvenile court system. And the trial judge then considered a study that was not submitted to the court. He did some independent research and found a study. Do you want to speak to that? Well, I mean, yes, there were some very strange justifications for granting the second transfer motion. One that is in line with one you're just speaking about now is also talking about in his experience, which is also not something that he allowed the parties to comment or address. Most minors in the Juvenile Department of Justice will be paroled at 19. Another strange comment because what does that have to do other than, well, I don't think 19 is old enough for this particular minor, even though that's a six-year real-time sentence counting credit back to the minor's incarceration. The comment on the study was that nothing works in the Juvenile Department of Justice. So I'm finding the rehabilitation option is not even an option because nothing works in the Department of Justice. My response in the reply brief, Justice Wright, I talked about that, is the statute requires him to consider this minor's rehabilitation potential, not how good is the system doing with every other minor, and that's how they're going to do with this minor. Some minors are rehabilitated just by age. I mean, we all know some. That was just a real change of circumstances. I mean, they grow up in horrible times. They become mentored by someone responsible who happens to be a Department of Corrections officer or counselor. I'll stop at that point because I know your time is limited. The trial judge considered this Department of Juvenile Justice report dated December 13, 2011, and I'm going to reach my own decision whether the judge can do his independent research on those matters. But in your brief, you also ask us to consider studies that are part of the record. So if you're going to complain that the trial judge did it down below, why are you asking us to do it? My complaint about what the trial judge did below was not based on the addressing matters off the record. It was based on those matters don't matter. I mean, they're irrelevant. They don't reach the factors that the statute. Now, what I have cited addresses the evolving standards that apply to how we treat juveniles. I don't think that's much different than citing Justice or Professor Lefebvre in a search and seizure case as to, you know, what the standards for police officers should be when they decide to look for someone to stop on the highway. I mean, those are everyday realities about juvenile development. Those are the articles that I was citing. Thank you. You've answered my two questions. All right. So at the heart of both our issue regarding the discretionary transfer and the later imposition of the harsh minimum sentence is a common sense reality that the signature qualities of youth are transitory qualities. And these are frequently changing traits that just aren't compatible with the one-size-fits-all sentencing schemes that can constitutionally be applied to an adult. Thank you. So we would ask first that you consider reversing Judge Fredrickson's new transfer order, and if you don't agree with that, that you strike the sentence as unconstitutional. Thank you. Thank you, Mr. Kraus. Now, of course, you'll have some rebuttal. Mr. Austell? Thank you. May it please the Court? Counsel? On the second issue, you started with the sentencing issue, obviously, about the mandatory minimums and such. And in this case, following the second transfer hearing, the bench trial, he was sentenced, of course, to 21 years, which includes, as you noted, the six-year minimum for the Class X and the 15-year firearms enhancement. The discretionary transfer statute specifically requires the juvenile judge to consider whether the security of the public requires sentencing under Chapter 5 of the Uniform Code of Corrections. And thus, the plain language of the statute shows that the legislature intended that a minor would be subject to adult sentencing if the transfer was allowed. And his brief defendant relied primarily on Supreme Court cases of Miller v. Alabama, JDB v. North Carolina, Graham v. Florida, and Roper v. Simmons, and the Illinois Supreme Court case of Leon Miller, and all of which are distinguishable from this case because they involved either a mandatory life sentence or a death sentence, which was imposed on a minor. Now, this Court, of course, is very well aware that the legislature has the discretion to define offenses and determine the penalties. And as this Court observed in Smalley, quote, the legislature has the authority to prescribe mandatory sentences that restrict the judiciary's discretion and ability to consider mitigating factors, end quote. Well, let me ask you, and certainly you're right, but one wonders, do you think the legislature, when they were writing the criminal code, well, who knows what they were thinking about, but do you think one of the things that might have happened to be that they were thinking about 13-year-olds being tried as adults when they were, do you think it even entered their minds as to whether, because they're writing this I agree that they may not at the time of writing that that code considered the transfer statutes at the time. However, I would submit that they did at the time they did the transfer statutes because in the transfer statutes they specifically are talking about using the criminal code. And so I believe that they did consider that at the time. And we also have, well, it hasn't been discussed here, the Second District Court in Harmon recently held that sentencing a minor to an adult sentence that includes the mandatory firearm enhancement is constitutional. So that's been decided by the appellate court, and that court also considered the Supreme Court cases of Miller, J.D.B., Graham, and Roper, the same cases that Fennett relies on. And the Fourth District in Pacheco considered Miller, Graham, and Roper as well as the Leon and Miller case, and it considered the automatic mandatory minimum sentencing provisions and found that the automatic imposition of an adult sentence does not violate the Eighth Amendment or the proportionate penalties clause. That court, you know, in full disclosure, that case is up on appeal to the Illinois Supreme Court. It's been briefed, but it's not yet set for argument. But we would ask this court to follow both the Harmon and the Pacheco courts' holdings, finding that these minimum sentences are constitutional. And as far as the transfer hearing, the people addressed this very substantially in our brief. We believe that all the factors that were raised by the defendant in his brief, we've shown that, in fact, the trial judge did consider all the factors. He did a proper job, that the transfer itself was proper. And, of course, there's no complaint about the second bench trial being proper. So I don't think that's an issue even when you review the record. What did the court consider with respect to programs available? Programs available said that they were not adequate. But more importantly than that, he found that the defendant wouldn't participate adequately in these programs, even if there were programs that were available. Given his history. Who submitted the evidence of the programs available? Part of what was provided was programming that was provided by a probation officer who had written a report himself on all the available programs throughout the state, including residential facilities for juveniles and such. And, of course, as you mentioned, the judge looked at that one report. I don't know where it came from, frankly. But it is in the probation report, what programs were available? Absolutely. There was testimony about it, and the report was admitted into evidence, as I recall. And it's not just specific to a particular locale, but it was statewide, what facilities and what programs were available. I have, I think you've been here long enough, you know that I read a lot of the cases the parties cite to us, and I study the briefs. But I've resisted the temptation to read the Office of Juvenile Justice and Delinquency Prevention Juvenile Justice Bulletin, as cited in Mr. Corrales' brief. Do you have an objection to us going outside the record and reading those articles? Well, certainly, because they were not brought up before the trial court. And if something is not considered by the trial judge, then, of course, the standard rule is that it's then not considered by a reviewer. I will tell you, I haven't read it yet. I didn't know if you objected to it in your brief or not. Certainly, we did. But your position is it should not be read by this court? Correct. And so, just as I asked your learned opponent, then why could the trial judge do the same thing that you don't want us to do? The trial judge was reviewing a report from the state of Illinois. He considered that. If you want to consider that, even if he considered it incorrectly, fine. But if we're going outside the record and we're going to start pulling things out everywhere, then it becomes a jump on let's find every report in the world that says this, says that, and everything. And, of course, this is a court of review, as I've been reminded in the past by other justices, that we only stick to the record in the trial court. Thank you for answering the question. And regarding one last issue, this is out-of-state court, the Iowa Supreme Court case of State v. Lyle, which did find in Iowa that mandatory minimum sentences for juveniles are unconstitutional. But what we have really that's completely different, other than the fact that it's an out-of-state court, is that in Iowa, the court specifically indicated that the legislature had recently changed the Iowa law. They said, quote, our legislature has already started to signal its independent concern with mandatory prison sentences for juveniles. In 2013, it expressed this recognition by amending a sentencing statute to remove mandatory sentencing for juveniles in most cases. It quoted the statute, which stated, in part, that if an offender was under 18 at the time it was committed, quote, the court may suspend the sentencing holder, in part, including any mandatory minimum sentence. So Iowa has very specifically gone a different direction than Illinois has. But the United States Constitution means the same thing in Illinois as it means in Iowa, as it means in Nebraska, as it means in Oklahoma, right? So in that regard, what Iowa does or doesn't do is irrelevant to the question of whether our sentencing scheme violates the Constitution. And what I'm wondering is, if mandatory minimums are unconstitutional as applied to juveniles, then what about a garden variety class X felony where the mandatory minimum is six years? Well, I see that point as well taken. One thing I need to point out, when we've had multiple U.S. Supreme Court cases dealing with these sentences, right? In any of those, Graham, Roper, Miller, they could have said all mandatory minimums are disallowed. But they didn't. They said only the most severe penalties, life sentences, death sentences, can't have them. Of course, they only decided the case that was in front of them, too, right? I mean, if they did what they were supposed to do, and that was to decide the issue. And the issue in front of them was mandatory, what, life without parole or something? And in one case, death sentences. I mean, they decided the issue that was in front of them, I suppose. So what they'll do when they're faced with this issue, which I suspect they will be, because it seems, I mean, the argument has a certain amount of sex appeal. Sure. I mean, emotionally, I think all of us can say, well, you know, I taught junior high. Let me be personal here. I taught junior high for nine years. The kids are stupid. You know, let's get real. Between that the hormones are raging and they're out of control. And I understand that. And emotionally, I say, well, you know, maybe they shouldn't have them. But where do we stop? At what point do we say, is one year too much? Is two years too much? Well, and I don't think it's a matter of one year being too much or two years being too much. It's a matter of giving each sentencing judge the discretion to apply a sentence to the juvenile defendant that's in front of them. As opposed to, because, as you know, I spent two years in the police department. There are some 13-year-old kids that are just plain evil. And there are some that are just stupid, as you said. But maybe we're going to find that judges that sit in higher courts than us, and therefore much smarter, will determine that there's just got to be discretion when you, you've got to have discretion when sentencing a juvenile, even if he's transferred to adult court. And perhaps that means that the sentencing schemes, state steps for the sentencing schemes, are going to have to allow for that. It's a possibility. And maybe when we have this Pacheco holding coming up within the near future, our Supreme Court may actually say something along those lines, because that's pretty much what they're going to determine, is whether those mandatory minimums are allowed. And of course, the legislature certainly has the prerogative, since they write the law, to change the statutes to allow for that. But at this point, they haven't seen fit to do so. Do you think that that case is going to control, ought to control, the outcome of this case? Potentially. You know, at least in part. You know, certainly if we're dealing with a mandatory minimum sentence, period, that the outcome of that case certainly could control it, at least in the sentencing aspect of this particular case. Any other questions here? No, sir. All right. Thank you, Mr. Ossoff. Mr. Corrales and Rebello. Thank you. Just to clarify something as far as what judges would be allowed to do if we succeeded in the constitutional claim, or if the Illinois Supreme Court would find that discretion needs to be left with judges who are sentencing minors. That only means that it's not a mandatory situation. So if you do have a minor who, as you indicated, Justice Schmitz, is just, you know, evil incarnate, they're going to still be able to get 45 years for a non-robbery with a firearm. That's not off the table. That's just reserved for those who deserve it. The case we have is not that kind of minor, I would say. I understand that the statute and the statute. Let me just start from the second bullet. At the end of the day, it doesn't matter really whether your client is or is not that kind of minor. But the big question here is, is it unconstitutional to deny the trial judge a finder of fact, the ability to make that determination, and to give him a lesser sentence if he finds he's not that kind of minor, right? Right. Again, I shouldn't probably focus as much as I have on the constitutional issue, because really that's the last resort issue that you can even get to. And I think my comments would even apply more strongly to the finding of Judge Fredrickson, which, in a sense, by focusing so much on the security of the public, which is a primary factor in the statute but not the exclusive factor, this was a minor who had half a dozen years left to be able to be incarcerated in the juvenile system. I think what the judge's ruling that this could be transferred to adult court amounted to was a finding that this minor was incorrigible or of irredeemable character. Where does he get that finding from if he made that transfer? He got it from the kid's mother's testimony, who said the kid was out of control and she couldn't even control him. There's lots of out-of-control 13-year-olds in the world who become very productive adults and graduate universities. The problem is this minor had a mother that was interested in getting him to toe the line, and she's the one that reported him, frequently, hoping that juvenile court system would rein him in. She was begging for a warrant. Well, he said in his letter, which Judge Corey said he read and was sympathetic to, but he couldn't really do anything else anyway, that he was the only man in the family. He's 13 years old. He had no man guiding him. He would have been better off in the juvenile department of justice where I assume there are some male counselors, male educators, male figures who could have given him a chance to redeem his character. Instead, Judge Fredersen took the approach by transferring him that that's a waste of time. And I think that's where the abuse of discretion came into play. I would just say one thing about the distinction that Mr. Austell laudably tried to make with respect to the Iowa system. What I was hearing there is essentially because Iowa is trying to get ahead of the curve here and apply some of the common-sense approaches that Illinois should not, that we should stay behind the times and not recognize the common-sense realities that the United States Supreme Court is telling us time and time again should be applied with respect to minors. And again, that goes to the constitutional issue, but I think these are intertwined issues. The fact that this was going to be a throwaway sentence in effect at the adult level should have made Judge Fredersen give a little more consideration to not transferring this minor. Judge Fredersen's remarks were the juvenile court system or the juvenile correctional system is broken. Based on that comment, is it likely he's going to put anybody there when he's given a motion to transfer? His statement seems to be so broad. That's a good point. I mean, that would be a speculative thing. If I tried to put that in a brief, I think the word speculative would be an extra bold font on the state's brief. But if there's any report that I would like to see that wasn't submitted, it would be his granting or denying discretionary juvenile transfers. I mean, he was a troubled kid. I'm not minimizing Deontay's terrible choices as a 13-year-old, but he had a lot of time left to be treated and dealt with in a secure facility. He could determine his own course. He could link up with the gangbangers in the juvenile department of corrections, or he could identify with a counselor. It was his choice, but he didn't have that opportunity. It was taken away. Well, as far as him looking outside the record here, look, judges especially that are involved in the criminal cases, you read this stuff all the time. You get them in the mail every day and stuff, and you read these reports. There's a lot of reports out there that it seems to me the consensus is the juvenile justice system is nothing more than advanced crime school. And I mean, that theory is out there. So what they saw in this case, where as judges we get inundated with that stuff all the time. Read this, read that, read that, read that study. And so it doesn't offend me that he looked at that stuff. But, you know, the Supreme Court is always slapping us around telling us don't reach constitutional issues unless it's a last resort. Right. On this issue, I don't know how you avoid it. Seriously, at the end of the day, is it anything other than a constitutional issue? Well, you know, there's a discretionary opportunity for the judge to skirt the constitutional dilemma by considering between two options, one of which he didn't think was harsh enough. And I would say for a 13-year-old, being in juvenile DOC for as much as seven, eight years is pretty harsh. The prosecutor in this case at the original sentencing proceeding back in front of Judge Shadid said, if it weren't for the firearm add-on, we would only be asking for something over six. But since you have to go 15 years over six, we'll stick with the 21-year sentence. I mean, there was a lot of opportunity to give a pretty harsh penalty without transferring him to the adult court. So if the discretionary transfer statute is meant to be some kind of a savings device, it should be more often denied than granted. Because granting it where the mandatory minimum is harsh, like in this case, or as I indicated in my reply brief, sometimes 31 years without even killing, without even a death. 31 years for a minor with 85% applying it in an attempt murdered with a firearm. Those are harsh minimums that should buffer the judge's quick draw to grant the discretionary transfer. And it didn't in this case. Okay. Thank you. Thank you. Mr. Kralos, Mr. Oswald, thank you too. Thank you both for your arguments here this morning. The matter will be taken under advisement. And as I indicated earlier, Judge Holder will be participating and a written disposition will be issued. I didn't ask you to wire it up, but what do you think about this Supreme Court case? Is this going to control at least the second half of this case? There are so many issues in that case. I think it depends on whether they get to the eighth amendment. Okay. We'll be at a brief recess for a panel meeting before the next case.